## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

LUCIANNA DAOUT,

       Plaintiff,

 vs.

THE BANK OF NEW  YORK MELLON
FKA THE BANK OF NEW YORK, AS
TRUSTEE          FOR          THE
CERTIFICATEHOLDERS     OF     THE
CWABS,    INC.,    ASSET-BACKED
CERTIFICATES, SERIES 2006-25 and
SPECIALIZED LOAN SERVICING, LLC,

       Defendants.

_____/

### COMPLAINT

**COMES NOW,** the Plaintiff, LUCIANNA DAOUT, by and through undersigned counsel,

and brings this action against the Defendants, THE BANK OF NEW  YORK MELLON FKA THE

BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE

CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-25 ("BONY MELLON") and

SPECIALIZED LOAN SERVICING, LLC ("SLS"), and as grounds thereof would allege as

follows:

### INTRODUCTION

1.      This is an action brought by a consumer for Defendants' violation of the Truth in

Lending Act, 15 U.S.C. §§ 1601, *et seq.*, the Real Estate Settlement Procedures Act, 12 U.S.C §§

2601, *et seq.* ("RESPA"), and their implementing regulations, the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), and Florida Statutes §§ 559.55-559.785, known more

commonly as the "Florida Consumer Collection Practices Act", ("FCCPA").

2.      The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency authorized by Congress to supervise and enforce compliance of TILA and RESPA. The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, and Regulation Z, 12 C.F.R. § 1026, RESPA and TILA's respective implementing regulations.

3.      The FDCPA and FCCPA prevent debt collectors and persons, respectively, from engaging in abusive, deceptive, and unfair collection practices.

4.      SLS has developed and employed a scheme of charging illegal and marked-up "default-related" fees to Plaintiff's mortgage loan. These fees are reflected on mortgage statements and payoff statements issued by SLS. The purpose of charging these fees is to increase SLS's profit at the expense of Plaintiff.

5.      Instead of using its resources to assist Plaintiff in managing her loan payments, SLS uses its resources to manufacture fees to charge to Plaintiff's mortgage loan.

## JURISDICTION

6.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

7.      Moreover, this case is a civil action arising under the laws of the United States over which this Court has original jurisdiction under 28 U.S.C. § 1331.

8.      Under 28 U.S.C. § 1367(a), this court has supplemental jurisdiction over Plaintiff's state law FCCPA claim in that it is so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue in this District is proper because Plaintiff resides in Miami-Dade County, Florida, and this is the District where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

## PARTIES

10.     At all times material hereto, Defendant, BONY MELLON was and is a foreign corporation, incorporated under the laws of the State of New York; duly licensed to transact business in the State of Florida, and lists its registered agent as its President: Gerald Hassell, One Wall Street, New York, NY 10286.

11.     At all times material hereto, Defendant, SLS was and is a foreign corporation, incorporated under the laws of the State of Delaware; duly licensed to transact business in the State of Florida, and lists its registered agent as Capitol Corporate Services, Inc., 155 Office Plaza Dr., Suite A, Tallahassee, FL 32301.

12.     At all times material hereto, Defendant, BONY MELLON was and is a creditor as the term is defined in 15 U.S.C. §1602(g).

13.     At all times material hereto, Defendant, BONY MELLON was and is an assignee pursuant to 15 U.S.C. § 1641. Upon information and belief, the assignment to BONY MELLON was voluntary.

14.     At all times material hereto, Plaintiff was and is a resident of Miami-Dade County, Florida, and owns a home, which is Plaintiff's primary residence, in Miami-Dade County.

15.     At some point in time prior to the violations alleged herein, SLS was hired to service the subject loan.

16.     At all times material hereto, SLS, is and was a loan servicer as the term is defined in 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b), that services the loan owned by BONY

MELLON and secured by a mortgage upon Plaintiff's primary residence and principal dwelling, located at **** NW 116 Street, Miami, Florida 33167.

17.     At all times relevant to this Complaint, SLS, was and is a "person" as said term is defined under Florida Statute §1.01(3), and is subject to the provisions of Fla. Stat. § 559.72 because said section applies to "any person" who collects or attempts to collect a consumer debt as defined in Fla. Stat. § 559.55(1).

18.     At all times relevant to this Complaint, SLS, regularly collects or attempts to collect debts for other parties and is a "debt collector" as said term is defined under 15 U.S.C. §1692a(6) and Florida Statute §559.55(6).

19.     At all times relevant to this Complaint, SLS, regularly uses the mail and telephone in a business for the purpose of collecting consumer debts.

20.     At all times relevant to this Complaint, SLS, was acting as a debt collector with respect to the collection of Plaintiff's alleged debt.

21.     Upon information and belief, the primary function of SLS's, servicing business is to collect payment on mortgage accounts.

22.     Upon information and belief, SLS, began servicing the subject loan on or around November 16, 2013, after it was allegedly in default.

23.     Upon information and belief, SLS, was only hired as the servicer upon the disputed debt to attempt to collect upon the disputed debt.

24.     The debt that Defendant sought to collect from Plaintiff is an alleged debt arising from transactions entered into primarily for personal, family or household purposes.

25.     At all times relevant to this Complaint, Plaintiff, was and is a natural person, and is a "consumer" as that term is defined by 15 U.S.C. 1692(a)(3) and Florida Statutes §559.55(2),

and/or a person with standing to bring a claim under the FDCPA and FCCPA by virtue of being directly affected by violations of the Acts.

26.     At all times material hereto, the debt in question was a "debt" as said term is defined under 15 U.S.C. §1692a(5) and Florida Statute §559.55(1).

## BACKGROUND AND GENERAL ALLEGATIONS

27.     On or about November 22, 2006, Plaintiff entered into an adjustable rate promissory note agreement with First Interstate Financial Corp. (the "Note").

28.     The Note was secured by a mortgage on Plaintiff's residence located at **** NW 116 Street, Miami, Florida 33167, in favor of Mortgage Electronic Registration Systems, Inc. (the "Mortgage").

29.     Plaintiff's residence is a residential structure containing one to four family housing units.

30.     The Note signed by Plaintiff in connection with the Mortgage serviced by SLS is a consumer credit transaction within the meaning of, and subject to, TILA.

31.     The mortgage loan in question is a "residential mortgage transaction" as defined in 15 U.S.C. §1602(x).

32.     The mortgage loan in question is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b).

33.     In November 2013, SLS took over the servicing of Plaintiff's Mortgage Loan.

34.     SLS currently services the Mortgage Loan on behalf of the investor/owner BONY MELLON.

35.     SLS is neither the owner/trustee of the Mortgage Loan nor a party to the Note or Mortgage.

36.      Upon information and belief, SLS is paid an annual fee for its servicing of the Mortgage Loan.

37.      Upon information and belief, SLS is paid a percentage of the total unpaid principal balance on the Mortgage Loan.

38.      Since November 2013, SLS has hired third-party vendor(s) to perform "default-related" services on Plaintiff's property,

39.      Many of these "default-related" services are unlawful, unreasonable, and fraudulent.

40.      SLS has employed unlawful practices, policies, and procedures by causing to be charged fees which were not actually incurred, and/or which exceed the actual cost of the services rendered, and by rendering services that SLS has no reasonable basis to perform.

41.      SLS engages is such practice to minimize the costs incurred in servicing the Mortgage Loan, whilst maximizing profit, all at the expense of Plaintiff.

42.      On or about September 4, 2014, BONY MELLON filed a foreclosure action against Plaintiff in Miami-Dade County, Florida, bearing Case No. 2014-022885 (the "Foreclosure").

43.      On October 1, 2014, Loan lawyers, LLC ("Loan Lawyers"), as counsel for Plaintiff, filed a notice of appearance.

## REQUEST FOR INFORMATION

44.      In an effort to utilize the protections afforded to consumers by Congress, on or about October 22, 2014, Loan Lawyers—on behalf of Plaintiff—mailed to SLS a written request for information pursuant to TILA, Regulation X, and Regulation Z ("Plaintiff's RFI"). SLS received Plaintiff's RFI on or about October 27, 2014.

45.      A true and correct copy of same is attached as Exhibit "A".

46.     Plaintiff's RFI asked SLS to: (1) provide an accurate statement of the total outstanding balance that would be required to satisfy the above-referenced obligation in full as of a specified date ("payoff statement"); (2) identify the owner of Plaintiff's Promissory Note; and (3) provide responses to ten specific informational requests.

47.     SLS was obligated to provide an accurate payoff statement within seven (7) business days of receipt of Plaintiff's RFI, pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

48.     Section 1639g of TILA, states: "A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower."

49.     Section 1026.36(c)(3) of Regulation Z, states:

> [A] creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer.

12 C.F.R. § 1026.36(c)(3)

50.     SLS, was obligated to acknowledge receipt of Plaintiff's RFI in writing within five (5) business days pursuant to 12 C.F.R. § 1024.36(c).

51.     SLS, was obligated to provide a written response to Plaintiff's information requests within thirty (30) business days, which included the requested information or stated that the "requested information is not available to the servicer" and the "basis for the servicer's determination". *See* 12 C.F.R. § 1024.36(d).

52.     On November 4, 2014, SLS sent Loan Lawyers a written response to Plaintiff's RFI.

53.     A true and correct copy of same is attached hereto as Exhibit "B".

54.     SLS' response included what purports to be a Pay History from November 2013, the date SLS took over the servicing, up and through October 29, 2014.

55.     However, Plaintiff's RFI specifically requested a life of the loan or complete mortgage transactional history.

56.     Moreover, the Pay History is flooded with ambiguous charges to Plaintiff's Mortgage loan such as "Expense Advances, and "Corp ADV 1 Default Ad".

57.     Additionally, Plaintiff's RFI specifically requested for copies of all property inspection reports for the last six (6) months, including invoices, photos, and proof of payment. SLS failed to provide same.

58.     On November 4, 2014, SLS sent Loan Lawyers a payoff statement.

59.     A true and correct copy of same is attached hereto as Exhibit "C".

60.     The payoff statement included am ambiguous fee of "Outstanding Fees/ Corp. Advances" in the amount of $7,415.61.

61.     As such, on December 2, 2014, Loan Lawyers sent a correspondence to SLS informing same that there were ten (10) property inspection fees on the Pay History, but no invoices, reports, photos taken, or proof of payment provided as previously requested.

62.     A true and correct copy of same is attached hereto as Exhibit "D".

63.     Further, the correspondence also sought an explanation for the "Expense Advances", "Corp ADV 1 Default", and the $7,415.61 in "Outstanding Fees/ Corp. Advances" listed on the payoff.

64.     On December 19, 2014, SLS responded to the December 2, 2014, correspondence.

65.     A true and correct copy of same is attached hereto as Exhibit "E".

66.     Exhibit "E" failed to provide the property inspection fee reports, invoices, photos, and proof of payment.

67.     Additionally, SLS listed further ambiguous amounts that purport to be a "breakdown of fees you requested in your correspondence." *See* Exhibit "E".

68.     The sum all the fees listed is $6,482.30. However, the "Outstanding Fees/ Corp. Advances" listed on the payoff statement was the $7,415.61, a $933.31 difference.

69.     As such, SLS has failed or refused to provide an accurate payoff statement within seven (7) business days after receiving a request, contrary to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

70.     As such, SLS has failed or refused to provide an adequate response to Plaintiff's RFI, contrary to 12 C.F.R. § 1024.36(d)(1) and 12 C.F.R. § 1024.36(d)(2)(i)(B).

## PROPERTY INSPECTION FEES AND EXPENSE ADVANCES

71.     Plaintiff's RFI informed SLS that the property was occupied and that Plaintiff "has not allowed the property to deteriorate and has not committed waste on the property." *See Exhibit "A"*.

72.     Defendant caused property inspections to be performed on Plaintiffs' residence on January 10, 2014, February 11, 2014, March 17, 2014, April 14, 2014, May 14, 2014, June 17, 2014, July 17, 2014, August 15, 2014, September 17, 2014, and November 26, 2014. *See* Exhibit "B" and "E".

73.     Upon information and belief, SLS performs property inspection in order to increase its billing of Plaintiff and borrowers at large.

74.     SLS states in Exhibit "E" that "follow up inspections will occur every 30 days." Thus, SLS does not even have a basis to conduct property inspections, rather they are automatically performed every 30 days.

75.     Upon information and belief, SLS is not in need of monthly inspections.

76.     The inspections were performed by an unknown third party who was hired or otherwise retained by SLS to visit Plaintiff's home and to inspect the exterior and take pictures of the house, etc.

77.     These actions were taken in the open and in broad daylight, in full view of Plaintiff's neighbors, which caused embarrassment, anxiety and consternation to Plaintiffs.

78.     Upon information and belief, the BONY MELLON does not require or even request that SLS perform monthly property inspections.

79.     Upon information and belief, SLS is marking-up the cost of the property inspections at the expense of Plaintiff.

80.     Additionally, SLS has charged Plaintiff for a "Commitment Fee" in the amount of $300.00, "Document Duplication" in the amount of $2,003.45, "Pay-off Statement" in the amount of $200.00 and "Term Modifications" in the amount of $1,012.50.

81.     The above fees should not have been charged to Plaintiff's Mortgage loan and are an unlawful means to increase amounts due and owing.

## COUNT I –VIOLATION OF 15 U.S.C. § 1639g

82.     Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 70.

83.     Upon information and belief, BONY MELON has considerable control over SLS by virtue of a Servicing Agreement that governs their relationship.

84.     Upon information and belief, the above-referenced agreement contains specific details and guidelines that SLS is to follow.

85.     Upon information and belief, one of the very specific functions the Servicing Agreement was designed to cover was SLS's responding to requests for information, notices of error, and requests for payoff statements.

86.     Upon information and belief, BONY MELLON may terminate SLS's employment at any time.

87.     As its servicer, SLS is the employee and agent of BONY MELLON.

88.     BONY MELLON is responsible for SLS's failure to provide an accurate payoff statement since SLS was acting in furtherance and within the scope of its employment for BONY MELLON.

89.     Various courts in the Southern District have found that vicarious liability applies to TILA violations. *See* Lucien v. Federal Nat. Mortg. Ass'n, 2014 WL 2184934 (S.D. Fla. May 23, 2014); Khan v. Bank of New York Mellon, 849 F. Supp. 2d 1377 (S.D. Fla. Mar. 19, 2012); Kissinger v. Wells Fargo Bank, N.A., as Trustee for Soundview Home Loan Trust 2007–Opt2, Asset Backed Certificates, Series 2007–Opt2, 2012 WL 3759034 (S.D. Fla. August 30, 2012); and Santos v. Federal National Mort. Ass'n, 2012 WL 3860559 (S.D. Fla. Sept. 6, 2012).

90.     Plaintiff has hired Loan Lawyers, LLC, for legal representation in this action and has agreed to pay a reasonable attorney's fee.

91.     Plaintiff is entitled to the following damages for violations of TILA by Defendant, SLS: statutory damages of not less than $400 nor greater than $4000 pursuant to 15 U.S.C. § 1640(a)(2)(A)(iv), and the costs of this action together with a reasonable attorney's fee as determined by the court, pursuant to 15 U.S.C. § 1640(a)(3).

## COUNT II –VIOLATION OF 12 U.S.C. § 2605(k)

92.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 70.

93.     Section 6, Subsection (k) of RESPA states in relevant part:

> **(k) Servicer prohibitions**
> **(1) In general**
> A servicer of a federally related mortgage shall not--
> …
> **(C)** fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;
> **(D)** fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan; or
> **(E)** fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12  U.S.C. § 2605(k)(emphasis added)

94.     Sections 1024.35 (Notice of Error) and 1024.36 (Request for Information) of Regulation X were both promulgated pursuant to Section 6 of RESPA and thus subject to RESPA's private right of action. *See 78 Fed. Reg. 10696,* 10714, FN. 64 (Feb. 14, 2013)("The [CFPB] notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations"). *See also 78 Fed. Reg.* at 10737, 10753 (the CFPB noting that Section 1024.35 and 1024.36 implement Section 6(k)(1)(C) and 6(k)(1)(D) respectively).

95.     The CFPB's authority to prescribe such regulations under Section 2605(k)(1)(E), is stated in Section 2617 of RESPA: "The [CFPB] is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617.

*TL-9170*                                                                                                    *v.2*

96.     SLS has failed to or refused to comply with 12 C.F.R. § 1024.36(d)(1) and 12 C.F.R. § 1024.36(d)(2)(i)(B) in that SLS did not provide an adequate response to a request for information within the required timeframe.

97.     As such, SLS has violated 12 U.S.C. § 2605(k)(1)(E).

98.     Plaintiff has hired Loan Lawyers, LLC, for legal representation in this action and has agreed to pay a reasonable attorney's fee.

99.     Plaintiff is entitled to actual damages as a result of Defendant, SLS's failure to comply with Regulation X and RESPA, pursuant to 12 U.S.C. § 2605(f)(1)(A), including but not limited to: photocopying costs, postage costs, and reasonable attorney's fees incurred as a result of having to send additional correspondences due to SLS's failure to adequately respond to Plaintiff's RFI. *See* Almquist v. Nationstar Mortg., LLC, Case No 14-81178-CIV-RYSKAMP/HOPKINS at *5 (S.D. Fla 2014)(the Court finding that actual damages includes photocopying and postage costs, and attorneys' fees incurred as a result of loan servicer's noncompliance with REPSA); Marais v. Chase Home Finance, LLC, 24 F.Supp.3d 712 (S.D. Ohio 2014)(the court finding that actual damages encompass costs incurred in mailing QWR and "all expenses, costs, fees, and injuries" attributable to servicer's failure to appropriately respond to QWR); Cortez v. Keystone Bank, Inc., 2000 WL 536666, *12 (E.D. Pa. 2000)(the court finding that actual damages encompass compensation for pecuniary loss); Rawlings v. Dovenmuehle Mortg., Inc., 64 F.Supp.2d 1156, 1164 (M.D. Ala. 1999)(the court finding that actual damages include costs for correspondence and travel).

100.    Plaintiff is entitled to statutory damages in an amount not greater than $2000 pursuant to 12 U.S.C. § 2605(f)(1)(B), as a result of SLS's pattern or practice of noncompliance with Regulation X and RESPA.

101.    In this case alone, SLS has violated three (3) separate provisions of Regulation X

and RESPA.

102.    Moreover, Plaintiff's counsel can demonstrate numerous correspondences sent to

SLS, relating to other clients under the applicable statutes, in which SLS failed to acknowledge or

adequately respond as required by law.

103.    Plaintiff is entitled to the costs of this action, together with a reasonable attorney's

fee as determined by the court, pursuant to 12 U.S.C. § 2605(f)(3).

<strong><u>COUNT III-VIOLATION OF FDCPA: 15 USC 1692e</u></strong>

104.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 81.

105.    15 U.S.C. §1692e states in part:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any debt.
> Without limiting the general application of the foregoing, the
> following conduct is a violation of this section:
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by
> any debt collector for the collection of a debt.
> (10) The use of any false representation or deceptive means to collect
> or attempt to collect any debt or to obtain information concerning a
> consumer.

<u>15 U.S.C. § 1692e</u>

106.    The charge of fees to Plaintiff's Mortgage Loan for the fees described above is a

false representation of the character and amount of fees due and owing.

107.    SLS, through its agents, representatives and/or employees acting within the scope

of their authority violated 15 U.S.C. §1692e.

108.    As a direct and proximate result of the violation of the FDCPA by SLS, Plaintiff

has been damaged. The damages of Plaintiff include but are not necessarily limited to unlawful

charges to Plaintiff's account, mental pain and shock, suffering, aggravation, humiliation and embarrassment.

109.    Plaintiff has hired Loan Lawyers, LLC, to represent him in this action and has agreed to pay a reasonable attorney's fee.

110.    As a result of the above violations of the FDCPA, pursuant to 15 U.S.C. §1692k, Plaintiff is entitled to recovery for actual damages, statutory damages of up to $1000, together with reasonable attorney's fees and court costs.

### COUNT IV-VIOLATION OF FDCPA: 15 USC 1692f

111.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 81.

112.    15 U.S.C. §1692f states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1)

113.    The charge of fees to Plaintiff's Mortgage Loan for the fees described above is not expressly authorized by the agreement creating the debt or permitted by law.

114.    SLS, through its agents, representatives and/or employees acting within the scope of their authority violated 15 U.S.C. §1692f.

115.    As a direct and proximate result of the violation of the FDCPA by SLS, Plaintiff has been damaged. The damages of Plaintiff include but are not necessarily limited to unlawful

charges to Plaintiff's account, mental pain and shock, suffering, aggravation, humiliation and embarrassment.

116.     Plaintiff has hired Loan Lawyers, LLC, to represent him in this action and has agreed to pay a reasonable attorney's fee.

117.     As a result of the above violations of the FDCPA, pursuant to 15 U.S.C. §1692k, Plaintiff is entitled to recovery for actual damages, statutory damages of up to $1000, together with reasonable attorney's fees and court costs.

### COUNT V-VIOLATION OF FCCPA, FLORIDA STATUTES §559.72(9)

118.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 81.

119.     Florida Statutes § 559.72(9) states:

"In collecting debts, no person shall…
            (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

Florida Statutes § 559.72(9).

120.     The charge of fees to Plaintiffs' mortgage loan account for the fees described above is a claim or an attempt to enforce a debt that SLS knows is not legitimate.

121.     SLS, through its agents, representatives and/or employees acting within the scope of their authority knowingly violated Florida Statutes §559.72(9).

122.     As a direct and proximate result of the violation of the FCCPA by SLS, Plaintiff has been damaged. The damages of Plaintiff include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

123.     Plaintiff has hired Loan Lawyers, LLC, to represent him in this action and has agreed to pay a reasonable attorney's fee.

124.    As a result of the above violations of the FCCPA, pursuant to Florida Statute §559.77(2), Plaintiff is entitled to recovery for actual damages, statutory damages of up to $1000 per violation, together with reasonable attorney's fees and court costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, LUCIANNA DAOUT, respectfully asks this Court to enter an order granting judgment for the following:

(a) That SLS be required to provide an accurate payoff statement;

(b) That SLS be required to provide the information requested in Plaintiff's RFI;

(c) That SLS be required to remove all unlawful and marked-up fees from Plaintiff's Mortgage Loan;

(d) For actual damages, statutory damages, costs, and reasonable attorney's fees, pursuant to 15 U.S.C. § 1640(a), 12 U.S.C. § 2605(f), 15 U.S.C. § 1692k, and Florida Statutes § 559.77(2); and

(e) Such other relief to which this Honorable Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, LUCIANNA DAOUT, hereby demands a trial by jury of all issues so triable.


Respectfully Submitted,

 /s/ Aaron Silvers
Aaron Silvers, Esq.
Florida Bar No.: 104811
E-mail: asilvers@floridaloanlawyers.com
Yechezkel Rodal, Esq.
Florida Bar No.: 91210
E-mail: chezky@floridaloanlawyers.com
LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Ave., 2nd Floor
Fort Lauderdale, FL 33316
Telephone:      (954) 523-4357
Facsimile:      (954) 581-2786