## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-cv- 20087-UU

LUCIANNA DAOUT,

               Plaintiff,

v.

THE BANK OF NEW YORK MELLON
 AS TRUSTEE FOR THE
CERTIFICATEHOLDERS
OF THE CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-25
FORMERLY
KNOWN AS THE BANK OF NEW YORK; and
SPECIALIZED LOAN SERVICING, LLC,
                                            /

               Defendant.
_____

## DEFENDANTS' MOTION TO DISMISS

Defendants, THE BANK OF NEW YORK MELLON AS TRUSTEE FOR THE

CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES,

SERIES 2006-25 FORMERLY KNOWN AS THE BANK OF NEW YORK ("BONY") and

SPECIALIZED LOAN SERVICING LLC ("SLS"), pursuant to Federal Rule of Civil Procedure

12(b)(6), move to dismiss the Complaint [D.E. 1] filed by Plaintiff, LUCIANNA DAOUT, and

as grounds state as follows:

I.      INTRODUCTION

On or about November 22, 2006, Plaintiff applied for and received a loan in the amount

of $130,000.00 (the "Mortgage Loan") from First Interstate Financial Corp.  Compl. ¶ 27.

Plaintiff's repayment of the Mortgage Loan was secured by her residence located in Miami Dade

Page **1** of **18**

County.  Compl. ¶ 28.  The Mortgage Loan was subsequently acquired by BONY and is currently serviced by SLS.  Compl. ¶¶ 34.

On September 4, 2014, BONY commenced foreclosure proceedings in Miami-Dade Circuit Court, in the case styled *Bank of New York Mellon v. Lucianna Daout, et al.* and designated Case No.: 2014-CA-22885 (the "Foreclosure Proceedings").  Plaintiff has been represented in the Foreclosure Proceedings by Loan Lawyers since September 24, 2014, the same law firm that currently represents them in this action.

On October 22, 2014, Plaintiff sent SLS a Truth in Lending Act ("TILA") request under 15 U.S.C §1639(g), a Request for Owner Information under 15 U.S.C. §1641(f)(2), and a Request for Information ("RFI") under 12 C.F.R. § 1024.36 of Regulation X, seeking certain information with respect to her mortgage loan, including a payoff statement.  Compl. ¶ 44. Despite having ample opportunity to conduct discovery in the Foreclosure Proceedings, Plaintiff instead chose to send the correspondence referenced above directly to Defendants with knowledge that Defendants were represented by counsel in the Foreclosure Proceedings.  This action was clearly taken with the sole purpose of creating further litigation.

Plaintiff's October 22, 2014 Request for Information under 12 C.F.R. § 1024.36 of Regulation X sought the following information from Defendants:

> 1.      The date you allege the subject mortgage loan went into default,
> 2.      The date upon which you began servicing the subject mortgage loan,
> 3.      Copies of all return affidavits of service and their corresponding invoices for payments of same.
> 4.      Copies of all property inspection reports for the mortgage loan identified herein during the last six (6) months, the digital photographs associated with each report, the invoice associated with each report, and proof of payment of each invoice.

5.      Copies of all broker price opinions for the mortgage loan identified herein during the last six (6) months,

6.      A copy of all information you have provided, if applicable, to any consumer reporting agency with respect to the status of the mortgage loan identified herein within the six (6) month period prior to your receipt of this request for information.

7.      If you have forced placed insurance, as described in Section 1024.37 of Regulation X, then please attach a copy of the master insurance policy and of the check or wire transfer for any funds you advanced to pay for the same. Also, identify and state the amount of any commission or fee the servicer received for force-placing such insurance,

8.      Please attach copies of any and all other written notices you provided to the obligors the mortgage loan identified herein before you forced placed the hazard insurance,

9.      A copy of the current mortgage note for the mortgage loan identified herein.

10.     Please provide an exact reproduction of the life of loan mortgage transactional history for this loan on the system of record used by you in servicing this loan. Also, to the extent this life of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

On November 4, 2014, Defendants mailed a written response to Plaintiff's RFI enclosing a copy of the Promissory Note, Deed, Welcome Letter, Payment History, Forced Placed Insurance Documents and advised a Payoff Statement would be sent under separate cover.[1] Additionally, SLS provided Plaintiff with information regarding the current investor of the loan, information on property inspections, and a confirmation of insurance on the property.  Finally, SLS provided the contact information for the employee assigned to the loan and explained that

---

[1] See attached response from SLS to Loan Lawyers dated November 4, 2014 as Exhibit "A". See attached Note enclosed in the November 4, 2014 response to Loan Lawyers as Exhibit "B". See attached Mortgage enclosed in the November 4, 2014 response to Loan Lawyers as Exhibit "C". See attached Welcome Letter enclosed in the November 4, 2014 response to Loan Lawyers as Exhibit "D". See attached Payment History enclosed in the November 4, 2014 response to Loan Lawyers as Exhibit "E". See attached Insurance information enclosed in the November 4, 2014 response to Loan Lawyers as Exhibit "F". Courts may consider along with the four corners of the complaint, any documents attached to the complaint or incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)

Page **3** of 18

all remaining requests for information were beyond the scope of what was required by the applicable statute and regulation, and no additional information would therefore be provided.

In her Complaint, Plaintiff claims that SLS violated the Real Estate Settlement Procedures Act ("RESPA"), by failing to provide adequate responses under 12 C.F.R. § 1024.36, Regulation X, and violated TILA by failing to provide an accurate payoff statement.  However, SLS's responses were clearly sufficient under the statutes/regulations. Consequently, Plaintiff's RESPA claim fails under 12 C.F.R. §§1024.36(f)(iii)(iv) as the requests qualify as either irrelevant or overbroad or unduly burdensome and as a result SLS is exempt under the status from responding to those requests.

Additionally, absent factual allegations suggesting that Plaintiff suffered actual damages, Plaintiff's RESPA claim is insufficiently pled and subject to dismissal.  RESPA requires that Plaintiff pleads either actual damages or a pattern or practice of violating 12 U.S.C. § 2605(e)(3). Further, Plaintiff has also failed to allege a pattern or practice on SLS's part resulting in a violation of RESPA.  Finally, Plaintiff's Complaint is the result of Plaintiffs' counsel's violation of Rule 4-4.2(a) of the Rules Regulating the Florida Bar, which prohibits attorneys from contacting represented parties.

Finally, Plaintiff alleges that SLS violated the Fair Debt Collection Practices Act ("FDCPA") and Florida Consumer Collection Practices Act ("FCCPA"), by adding charges to Plaintiff's loan balance, which were specifically authorized under the loan documents. Namely, the operative Note and Mortgage permit SLS to "do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property" therefore, the imposition of these

fees cannot form a basis for Plaintiff's FDCPA and FCCPA claims.[2]  In all, each of Plaintiff's claims fails to properly allege a cause of action, or is fatally deficient under clear legal precedent, and as such, Plaintiff's Complaint should be dismissed in its entirety

II.     LEGAL STANDARD

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a court, at this stage of the litigation, must consider the allegations contained in a plaintiff's complaint as true, this rule "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted if the plaintiff fails to state a claim for which relief can be granted.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*  The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.*  Where

_____

[2] This Court is permitted to take judicial notice of the operative recorded Mortgage, even at a motion to dismiss stage.

140188.00644/50679641v.1

a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*. Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id*. at 679.

Additionally, when reviewing the sufficiency of a complaint, the Court considers only the four corners of the complaint, along with any documents attached to the complaint or incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997); *See also: Davis v. Self,* 547 Fed.Appx. 927 (11th Cir 2013); *Gubanova v. Miami Beach Owner, LLC* (SDFL December 2, 2013).

Finally, a copy of a written instrument included as an exhibit to a pleading is a part of the pleading for all purposes, including a Rule 12(b) (6) motion to dismiss. *See* Fed.R.Civ.P. 10(c); *Solis-Ramirez v. U.S. Dept. of Justice,* 758 F.2d 1426, 1430 (11th Cir.1985). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir.2007). Thus, while courts accept the facts in a complaint as true in considering a motion to dismiss, they can be trumped by contradictory facts presented in an exhibit or attachment to the pleading. *See id.* "A copy of a written instrument included as an exhibit to a pleading is a part of the pleading for all purposes,

Page **6** of **18**

including a Rule 12(b)(6) motion to dismiss." *Indulgence Yacht Charters Ltd. v. Ardell Inc.,* No. 08–60739, 2008 WL 4346749, at *4 (S.D.Fla. Sept. 16, 2008) (citations omitted). [W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Id.* (alteration in original; citation and internal quotation marks omitted).

In Florida, the courts have repeatedly held that attachments to a complaint are part of the complaint for purposes of addressing a motion to dismiss. *See, e.g., Abele v. Sawyer,* 750 So. 2d 70, 74 (4th D.C.A. 1999)("While a court must confine itself its review to the four covers of the complaint and must accept as true all well-pleaded allegations, the exhibits are encompassed with the four covers of the complaint and must be considered therewith." (Internal citations omitted)). As the law has progressed, the courts have routinely viewed allegations in a complaint with statements made in attachments and have found repeatedly that the statements in the attachment are controlling if they contradict or conflict with allegations made in the complaint. *See, Anderson v. U.S.,* 245 F.Supp.2d 1217, 1221 (M.D. Fla. 2002)("The court will not accept as true allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.")

As such, when there is an attachment and there are statements of fact included therein, those statements are considered part of the complaint and must be given deference by the Court. Courts throughout Florida will dismiss complaints that include attachments which serve to negate or bring into doubt the allegations in the complaint itself.

III      ARGUMENT AND MEMORANDUM OF LAW

     A.      **BONY Cannot Be Held Vicariously Liable for SLS's Servicing Activities.**

Plaintiff's allegations against BONY are premised on BONY's vicarious liability for SLS's purported non-compliance with TILA.  As this Court has previously held, an assignee cannot be held vicariously liable for its loan servicer's actions. Therefore, this Court should dismiss the Complaint against BONY because it cannot be held vicariously liable.  The clear terms of 15 U.S.C. § 1641(f)(2) do not provide for vicarious liability of an assignee when the assignee is not also the servicer of the loan.  As Plaintiff concedes, BONY is merely an assignee of her Mortgage, not the servicer.

The Eleventh Circuit Court of Appeals has found that although § 1641(f)(2) imposes a duty on the servicer of an obligation, TILA's clear terms absolve the servicer from liability if it fails to satisfy that duty.  *Reed v. Chase Home Finance, LLC*, 723 F.3d 1301, 1303 (11th Cir. 2013) (finding that a servicer, which does not also own the obligation being serviced, is not subject to liability for violations of § 1641(f)(2)); *see also Holcomb v. Fed. Home Loan Mort. Corp.*, 2011 WL 5080324, *6 (S.D. Fla. 2011) ("While subsection (f)(2) sets forth a servicer's duties to the obligors, it does not impose any liability on the servicer.").  Consequently, a servicer is only liable for a violation of § 1641(f)(2) if the servicer is also an assignee and owner of the obligation.  15 U.S.C. § 1641(f)(1); *Reed*, 723 F.3d at 1303.

Section 1640(a) imposes liability on creditors. Specifically, 15 U.S.C. § 1640(a) provides:

> Except as otherwise provided in this section, any creditor who fails
> to comply with any requirement imposed under this part, including
> any requirement under section 1635 of this title, subsection (f) or

> (g) of section 1641 of this title . . . with respect to any person is
> liable to such person . . . .

"At first blush there appears to be a disjuncture between § 1640(a) and § 1641(f)(2)." *Kievman v. Fed. Nat'l Mortg. Ass'n*, 901 F. Supp. 2d 1348, 1352 (S.D. Fla. 2012). "Section 1640(a), a remedial provision, imposes civil liability on creditors for failure to comply with subsection (f)." *Id.* Yet section 1641(f)(2) imposes a duty only on mortgage servicers. *Id.* In an effort to bridge that gap, *Khan* and its proponents contend that "Congress meant to . . . make creditors liable under § 1641(f)(2) by intentionally inserting the private right of action for violations of § 1641(f)(2) into § 1640(a)." *Khan*, 849 F. Supp. 2d at 1382.

As noted in *Kievman*, "[f]ar from rendering any part of the statute superfluous, [the *Holcomb*] interpretation recognizes that § 1640(a)'s reference to subsection (f) creates a private right of action against those obliges who might employ unfair practices in *servicing* their loans as well as in their issuance and execution." *Kievman*, 901 F. Supp. 2d at 1353.   Section 1640 governs the civil liability of creditors under TILA, while section 1641 similarly prescribes the liability of assignees under the Act.  15 U.S.C. §§ 1640; 1641.  Where section 1640 assesses liability against creditors by reference to a subsection of section 1641, a creditor should be liable only to the extent as would be a similarly situated assignee.  Section 1641(f)(2) provides a private right of action only against assignees who own and service the relevant obligation for the purposes of TILA.  Accordingly, as held in *Holcomb* and by this court in *Kievman*, section 1640(a) provides a private right of action for (f)(2) violations only against creditors who also service the relevant obligation.

In the present case, BONY is an assignee pursuant to an assignment of mortgage.[3] SLS, not BONY, services the mortgage. The clear terms of § 1641(f)(2) do not provide for vicarious liability of a mortgage holder or assignee in interest when they are not themselves servicing the loan. Based on the foregoing, BONY should be dismissed from this suit because as merely an assignee, it is not liable for SLS's purported violations.

      B.      **Plaintiff's RESPA Claim Fails Because SLS, per Plaintiff's own Exhibits and Allegations, Adequately Responded to Plaintiff's RFI.**

To state a cause of action under RESPA, a plaintiff must allege facts to support that: (1) defendant is a loan servicer, (2) plaintiff sent defendant a request for information, (3) defendant failed to adequately respond within the appropriate framework, and (4) plaintiff is entitled to actual or statutory damages. 12 U.S.C. § 2605 (2014); *see also Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010) (holding that damages allegation is a necessary element of any claim under § 2605).

If the servicer determines a request is irrelevant or overbroad or unduly burdensome under 12 C.F.R. §1024.36(f)(iv), the servicer is exempt from complying with the requirements under 12 C.F.R. §1024.36(c) and (d) as the requests are improper. Specifically, 12 C.F.R. §1024.36(f) states in part as follows:

> (f) *Requirements not applicable.* (1) *In general.* A servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section if the servicer reasonably determines that any of the following apply: . . . . (iii) *Irrelevant information.* The information requested is not directly related to the borrower's mortgage loan account (iv) *Overbroad or unduly burdensome information request.* The information request is overbroad or unduly burdensome. An information request is overbroad if a borrower requests that the

---

[3]  *See* Pl.'s Comp. at ¶ 13.

servicer provide an unreasonable volume of documents or information to a borrower. An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) of this section or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances. To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information.

The CFPB's rules also include its own official interpretations in a supplement to Regulation X.[4] Pursuant to the CFPB's official interpretations[5] of its promulgated regulations, information requested is irrelevant if:

> i. Information that relates to the servicing of mortgage loans other than a borrower's mortgage loan, including information reported to the owner of a mortgage loan regarding individual or aggregate collections for mortgage loans owned by that entity;

Additionally, information requested is overbroad or unduly burdensome information if:

---

[4] *See* Section IV, Commentary, *Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act* (Regulation X), 78 FR 10696-01 ("RESPA section 19(a) authorizes the Bureau to make such reasonable interpretations of RESPA as may be necessary to achieve the consumer protection purposes of RESPA. Good faith compliance with the interpretations would afford servicers protection from liability under section 19(b) of RESPA."); *see also* 12 U.S.C. 2617(a) ("19(a) of RESPA authorizes the [Consumer Financial Protection] Bureau to prescribe such rules and regulations, **to make such interpretations**, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of RESPA, which includes the consumer protection purposes laid out above.")

[5] *See Bolam v. Mobil Oil Corp.,* 893 F.2d 311, 313 (11th Cir.1990) (per curiam) ("Under Florida law, the interpretation of the agency charged with interpreting and enforcing a statute is entitled to great deference.").

140188.00644/50679641v.1

i. Requests for information **that seek documents relating to substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization, and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing information and documents, and sale or securitization information** and documents; . . . . iv. **Requests for information that are not reasonably likely to assist a borrower with the borrower's account**, including, for example, a request for copies of the front and back of all physical payment instruments (such as checks, drafts, or wire transfer confirmations) that show payments made by the borrower to the servicer and payments made by a servicer to an owner or assignee of a mortgage loan.

12 C.F.R. § Pt. 1024.36 (f)(iv) (emphasis added).

Simply put, a servicer is not required to respond to a borrower's request for information if the request is overbroad or unduly burdensome.  Plaintiff's need and motives behind her request for ten (10) categories of documents – including (a) return affidavits of service and their corresponding invoices for payments of same; (b) copies of all property inspection reports for the mortgage loan identified herein during the last six (6) months; (c) digital photographs associated with each report; (d) the invoice associated with each report and proof of payment of each invoice; (e) copies of all broker price opinions for the mortgage loan identified herein during the last six (6) months; and (f) a payoff quote – are  unclear from the Complaint.

Plaintiff makes no mention of being able to avoid foreclosure by satisfying the Mortgage Loan.  Rather, Plaintiff alleges that "[i]n an effort to utilize the protections afforded to consumers by Congress, on or about October 22, 2014, Loan Lawyers—on behalf of Plaintiff—mailed to SLS a written request for information pursuant to TILA, Regulation X, and Regulation Z." Compl. ¶ 44.  It is plainly clear from the face of the October 22, 2014 RFI that a majority of the information sought falls squarely under the definition of overbroad or unduly burdensome.  The

RFI clearly seeks documents relating to the foreclosure, mortgage servicing, and other information not likely to assist the borrower and, which Plaintiff could have easily obtained through discovery in the Foreclosure Proceedings.

Furthermore, Plaintiff claims in her December 2, 2014 letter that the SLS November 4, 2014 response was "woefully inadequate and falls short of compliance". Simply determining that a response is inadequate without any basis for the determination is certainly not permitted or contemplated by the statute, and would open the flood gates to frivolous litigation. As demonstrated by the plain language of the statute, and the CFPB's interpretation, the purpose of the statute is to afford a borrower an opportunity to obtain information actually needed by the borrower, and not subject lenders and servicers to liability when a borrower, pursuant to his own opinion, determines that a response is inadequate.

This case in not unlike *Guillaume v. Fed. Nat. Mortg. Assoc.*, 928 F. Supp. 2d 1337 (S.D. Fla. 2013), where the "plaintiff did not suffer from any meaningful deprivation information concerning their mortgage loan" and "could have easily acquired such information through discovery in the state foreclosure action." *Id*. at 1342. In all, this lawsuit is like *Guillaume* in that it is "not grounded on genuine failures of disclosure or surreptitious loan practices, but rather as a superfluous attempt to leverage settlement and obtain fees." *Id*. at 1342.[6]

Finally, the documents attached to Plaintiff's Complaint clearly contradict the general and conclusory allegations of the pleading. Plaintiff attached a copy of the payoff letter it received from SLS in response to the RFI. Absent from the payoff letter is any reference to a fee

---

[6] This sentiment has been echoed by other courts regarding borrowers using RESPA as a proverbial switch. "RESPA exists to prevent abuse of borrowers by servicers—not to enable abuse of servicers by borrowers." *Hittle v. Residential Funding Corp.*, 2:13-cv-353, 2014 U.S. Dist. LEXIS 107423, *37 (E.D. Ohio. August 5, 2014)

for $7,415.61 under the title of "Outstanding Fees/Corp. Advances." Whereas Plaintiff alleges in paragraphs 61, 63, and 68 of its Complaint that SLS listed a fee for $7,415.61 under the title of "Outstanding Fees/Corp. Advances," this allegation is contradicted by the exhibits attached to Plaintiff's Complaint. SLS was under no obligation to respond to Plaintiffs December 2, 2014 follow up letter requesting an explanation of the fee for $7,415.61 under the title of "Outstanding Fees/Corp. Advances" in the payoff as that figure did not exist. The request for further explanation clearly qualifies as irrelevant as Plaintiffs counsel listed a fictitious figure and expected SLS to provide an accurate response.

Since SLS complied with 12 C.F.R. §§1024.36 (f)(iii)(iv), Plaintiff's claims are unfounded. The RFI plainly fell under the definition of "irrelevant" and "overbroad and unduly burdensome." Nevertheless, SLS, in good faith, responded to the RFI with as much information as was available to SLS. Therefore, Plaintiff's claims are baseless, contrary to the requirements of the statute, and must be dismissed with prejudice.

C. **Plaintiff's FDCPA and FCCPA Claims Fail to State a Cause of Action, as the Operative Note and Mortgage Allow SLS to Charge the Alleged Fees.**

Plaintiff's FDCPA and FCCPA claims fail for the simple reason that the operative Note and Mortgage permit SLS to charge both late fees and property inspection fees. Therefore, the imposition of these fees cannot form a basis for Plaintiff's FDCPA and FCCPA claims. This Court is permitted to take judicial notice of the operative recorded Mortgage, even at a motion to dismiss stage. *See Bryant v. Avado Brands Inc.,* 187 F.3d 1271, 1279-80 (11th Cir. 1999) (holding that when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment [as Rule 12(d) allows when a movant presents arguments or materials that go beyond the four corners of the

Page **14** of 18

140188.00644/50679641v.1

complaint], because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

Plaintiff alleges that the "charge of fees to Plaintiff's Mortgage Loan for the fees described above is a false representation of the character and amount of fees due and owing" Compl. ¶106. Plaintiff further alleges the "charge of fees to Plaintiff's Mortgage Loan for the fees described above is not expressly authorized by the agreement creating the debt or permitted by law." Compl. ¶113. Finally Plaintiff alleges the "charge of fees to Plaintiff's mortgage loan account for the fees described above is a claim or an attempt to enforce a debt that SLS knows is not legitimate" Compl. ¶120. Contrary to Plaintiff's allegations, the operative Mortgage permits both the imposition of late fees and property inspection fees, and as such, neither of these fees can constitute a basis for Plaintiff's FDCPA and FCCPA claims.[7]

Therefore, Plaintiff's claim that the imposition of these charges is improper, and violates the FDCPA and/or FCCPA, is unfounded. Given that Plaintiff's only alleged basis for stating a cause of action under the FDCPA and FCCPA is SLS's imposition of the late charges and property inspection fees, and given that both of these fees are specifically authorized by the operative Mortgage and Note Plaintiff's claim fails to state a cause of action and must be dismissed.

Putting aside the fact that these charges were authorized by the relevant loan documents, to the extent Plaintiff claims that the charges were in some way "false" and violate §1692e(2) of the FDCPA, Plaintiff's claim also fails.  Under Plaintiff's line of reasoning, although these charges were authorized by the loan documents, they were somehow a false representation of the

---

[7] See ¶1, 14 of the operative Mortgage, attached at Exhibit 1.

amounts owed, thus leading to liability under the FDCPA. This line of reasoning creates an extremely slippery slope that must be immediately stamped out before stretched to absurdity. Under Plaintiff's reasoning, a servicer or lender could be liable under the FDCPA for literally any bookkeeping method that is disagreeable to the borrower..

This was clearly not Congress' intent when drafting the statute. The FDCPA was created to prevent systematic debt collection abuses by those seeking to prey on debtors, not to give rise to liability of a servicer/lender in a contractual relationship with a borrower, where the servicer/lender has made an error in calculating a loan balance. Additionally, both 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36, and TILA provide avenues for the Plaintiff to have corrected any calculations they believe were done in error, and Plaintiff can easily challenge what she believes to be incorrect in the Foreclosure Proceedings. The Court should not permit Plaintiff to maintain an FDCPA claim based on an allegation of "false charges," which were specifically authorized by the loan documents, under a mere allegation that these charges were somehow unwarranted. This type of claim improperly broadens the scope of the FDCPA in what is clearly a contradiction of Congressional intent.

To the extent Plaintiff claims that the charges were "not expressly authorized" and violate §1692f of the FDCPA, Plaintiff's claim also fails. Plaintiff suggests that servicer/lenders are only permitted to issue charges using only terms found in the loan documents. This is simply incorrect. The Mortgage permits the lender to "do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property." This language is broad enough to encompass all the charges SLS assessed to Plaintiff's loan.

Furthermore, Plaintiff's contention that the charges were "an attempt to enforce a debt that SLS knows is not legitimate" is again another bald allegation lacking any support. The included attachments to the Complaint serve to negate the allegations in the Complaint. The Mortgage and Note are exhibits to Plaintiff's Complaint and both authorize inspections and imposition of fees to protect the security interest.

Finally, it is well within the terms of the loan documents for SLS to schedule and conduct property inspections on the property in furtherance of its protection of the collateral. Nowhere in the terms of the loan documents does it provide a loophole for the borrower to go into default and send a letter promising to keep the property in good condition as a way of preventing SLS from conducting inspections. Assurances from borrowers have zero effect on a lender's duty to protect its collateral. Allegations that the purposes of property inspections are "to increase its billing of Plaintiff and borrowers at large," Compl. ¶73, or that "SLS is marking up the cost of the property inspections at the expense of Plaintiff" Compl. ¶79, are simply false and unsupported.  When Plaintiff defaulted on her loan obligations, BONY, SLS, and its agents were permitted under the terms of the loan documents to "do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the Property."

**WHEREFORE**, Defendants The Bank of New York Mellon as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-25 Formerly Known as The Bank of New York Mellon and Specialized Loan Servicing LLC, respectfully move for entry of an order dismissing this action in its entirety, for an award of attorney's fees and costs in its favor, and all further relief this Court deems proper.

140188.00644/50679641v.1

Submitted: February 13, 2015.

/s/ Jack S. Kallus
Jack S. Kallus
Florida Bar No. 56111
Manuel S. Hiraldo
Florida Bar No. 030380
BLANK ROME, LLP
500 E. Broward, Blvd, Suite 2100
Fort Lauderdale, FL  33394
Telephone: 954-512-1800
Facsimile: 954-512-1818
Email: jkallus@blankrome.com
*Attorneys for SLS and BONY*

### CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2015, I filed a copy of the foregoing via the Court's

CM/ECF system, which will send notice to all parties of record.

/s/ *Jack S. Kallus*
Jack S. Kallus
Florida Bar No. 56111

140188.00644/50679641v.1